IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATEYA D. SCHOCH,

                Plaintiff,

    v.                                         OPINION and ORDER

FRANK J. BISIGNANO,[1]                        25-cv-151-jdp
Commissioner of Social Security,

                Defendant.

---

Plaintiff Mateya D. Schoch seeks judicial review of a final decision of defendant Frank J. Bisignano, Commissioner of the Social Security Administration, finding that Schoch was not disabled within the meaning of the Social Security Act. Schoch asserts multiple objections to administrative law judge (ALJ) Michael Schaefer's decision, all grounded in a contention that the ALJ did not adequately explain his reasoning. The ALJ's decision is supported by substantial evidence, and Schoch has not identified any legal errors, so the court will affirm the decision.

BACKGROUND

Schoch applied for disability benefits and supplemental security income, originally alleging that she had been disabled since December 1, 2020, but later amending her alleged onset date to July 1, 2018. R. 16.[2] Her claim was denied at the initial level, and it was also denied at the reconsideration level. *Id.* Schoch requested a hearing before an ALJ. *Id.* The ALJ

---

[1] The court has amended the caption to reflect Frank J. Bisignano's appointment as Commissioner. *See* Fed. R. Civ. P. 25(d).

[2] Record cites are to the administrative transcript located at Dkt. 5.

found that Schoch suffered from the following severe impairments: depressive disorder, anxiety disorder, autism spectrum disorder, post-traumatic stress disorder, and fibromyalgia. R. 19. The ALJ ascribed to Schoch the residual functional capacity (RFC) to perform light work with additional limitations. R. 22. The ALJ found that Schoch had no past relevant work. R. 26. Relying on the testimony of a vocational expert, the ALJ found that Schoch was not disabled because she could perform jobs that exist in significant numbers in the national economy, such as housekeeping cleaner, marker, and routing clerk. R. 27.

Schoch now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citation omitted).

ANALYSIS

Schoch raises multiple objections to the ALJ's decision, all of them grounded in a contention that the ALJ failed to articulate reasons for his conclusions. Schoch is challenging only the ALJ's findings related to her mental health limitations. Dkt. 6, at 3 n.4. Schoch's primary objection relates to the ALJ's handling of her subjective symptoms and treatment history. She also objects to the ALJ's RFC assessment and his decision to discount her therapist's opinion.

2

## A. Subjective symptoms and treatment history

Schoch asserts that the ALJ failed to adequately explain his reasons for discounting her subjective symptoms and treatment history. Dkt. 6, at 7–13. When an ALJ gives specific reasons supported by the record for discounting a claimant's subjective symptoms, a court will not overturn the ALJ's credibility determination unless it is patently wrong. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). The ALJ partially credited Schoch's self-reported symptoms of panic attacks, social anxiety, being easily overwhelmed, poor concentration, and difficulty following instructions and completing tasks. R. 24. But the ALJ found that the intensity and limiting effects reported by Schoch were unsupported based on three types of evidence in the record: (1) the objective medical evidence; (2) Schoch's daily activities; and (3) Schoch's conservative treatment. *See* R. 23–24.

### 1. Objective medical evidence

The ALJ concluded that Schoch's subjective report of her symptoms was not supported by the objective medical evidence, including mental status exams, which showed that Schoch generally had an appropriate mood and affect, and her cognitive function was generally within normal limits, even though she was occasionally anxious and depressed. R. 24 (citing R. 303, 307, 318, 379, 450, 456, 459, 475, 558, 573, 580, 584, 595, 597, 708, 816, 1091, 1192, 1143, 1512, 1523, 1542, 1607, 1628, 1714). Schoch contends that the ALJ erred in two ways: (1) the ALJ simply included a lengthy string citation without explaining why the cited evidence supported his conclusion; and (2) the ALJ cited evidence other than Schoch's mental status exams. Dkt. 6, at 7–10; Dkt. 12, 1–4.

First, the ALJ's use of a string citation to support his conclusion was not reversible error. The court agrees that string citations are not substitutes for analysis. *See Ninedorf v. O'Malley*,

3

No. 23-cv-998, 2024 WL 3070175, at *3 (E.D. Wis. June 20, 2024); *Niles v. Berryhill*, No. 1:16-cv-02214, 2017 WL 4160922, at *3 (S.D. Ind. Sept. 20, 2017). But ALJs are "subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Still, they must explain how they reached their conclusions so that courts can trace their paths of reasoning and meaningfully review their findings. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000). Simply put, ALJs can't just provide the dots; they must connect them too.

In this case, the court can trace the ALJ's reasoning for rejecting Schoch's subjective report of her symptoms. The ALJ concluded that Schoch's social and cognitive functions were "essentially intact." R. 24. To reach this conclusion, the ALJ relied on two psychological evaluations of Schoch: one from October 2021, R. 1712–20, and the other from June 2022, R. 448–53. The October 2021 evaluation found that Schoch's mood was normal and that her thought processes were "logical, coherent, and without gross distortion." R. 1714. Schoch's cognitive functioning and social aptitude were determined to be within the average range. R. 1714–15. The June 2022 evaluation found that Schoch's mood was normal and that she was able to "maintain a generally adequate stream of mental activity." R. 450. Schoch doesn't dispute that the evaluations constitute substantial evidence or that the ALJ built a logical bridge between this evidence and his conclusions. The ALJ didn't err by using a string citation to refer to *additional* evidence supporting his conclusion.

Second, the ALJ didn't commit reversible error by citing evidence other than Schoch's mental status exams. Schoch points out that the ALJ rejected her subjective report of her symptoms based on Schoch's "longitudinal mental status findings," R. 24, but the ALJ's string citation refers to evidence other than longitudinal mental status findings, including Schoch's

self-reported symptoms. Dkt. 12, at 2–3. The court understands Schoch to contend that the ALJ erred by mischaracterizing the evidence; the ALJ should have used the phrase "evidence in the record" instead of the phrase "longitudinal mental status findings." But the law does not require ALJs to use specific words in their analyses or risk having their decisions remanded. *See Martin*, 950 F.3d at 374. And ALJs may consider the entire record, not just objective medical evidence, when discounting a claimant self-report. *See Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). Schoch hasn't demonstrated that the ALJ's decision to discount her subjective symptoms was patently wrong.

### 2. Daily activities

Schoch contends that the ALJ erred by considering Schoch's daily activities when determining her ability to work. Dkt. 6, at 10–12. To support her contention, Schoch points to the ALJ's statement that "[s]ome of the mental abilities and social interactions required in order to perform [Schoch's daily] activities are the same as those necessary for obtaining and maintaining employment." R. 23. ALJs may not equate a claimant's daily activities with her ability to work. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). But they may consider a claimant's daily activities when determining whether a claimant's impairments are credible or exaggerated. *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

In this case, the ALJ permissibly considered reports of Schoch's daily activities to evaluate her statements concerning the limiting effects of her symptoms. The ALJ observed that, despite alleging that she struggled with her memory and the ability to follow directions, Schoch admitted that she prepared meals, cared for pets, and handled her finances. R. 20. The ALJ also observed that Schoch alleged that she struggled with interpersonal interactions,

but she acknowledged attending church multiple times a week and maintaining friendships. R. 21. The ALJ also noted that Schoch alleged that she could only pay attention for about 15 minutes but reported that she occasionally made art with her sister for a few hours. R. 21, 60. The ALJ didn't err in concluding that Schoch's ability to participate in her daily activities "is not completely consistent with [her] allegations of disabling functional limitations." R. 23.

Schoch resists this conclusion. She argues that, even if the ALJ properly considered her daily activities, the ALJ did not explain the inconsistencies between those activities and her symptoms. Dkt. 12, at 5. But Schoch admits that the ALJ discussed those inconsistencies in the "paragraph B" section of his opinion. *Id.* ALJs need only conduct an analysis once; they don't have to repeat a substantially similar analysis in another section of their opinion. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

### 3. Conservative treatment

Schoch contends that the ALJ failed to adequately articulate his reasons for discounting Schoch's treatment history when he concluded that Schoch's treatment "has been very conservative." R. 24. An ALJ may consider a claimant's conservative treatment in evaluating her symptoms. *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022). But the ALJ must do more than make a passing reference to a claimant's treatment history; he must explain why the treatment was conservative or provide record support for his conclusion. *Swiecichowski v. Dudek*, 133 F.4th 751, 759–60 (7th Cir. 2025).

In this case, the ALJ sufficiently explained why he found Schoch's treatment to be "very conservative." In the "paragraph B" section of his opinion, the ALJ reasoned that Schoch's mental impairments were adequately managed because they were "successfully controlled with psychotropic medications and/or therapy" and she "did not require psychiatric hospitalizations

or in-patient care." R. 22. To support his conclusion, the ALJ cited two documents detailing Schoch's treatment plan, both of which indicate that Schoch's mental impairments were treated with cognitive behavior therapy. R. 434–46, 703–16. Given the deference owed to an ALJ's factual determinations, the court declines to second-guess the ALJ's characterization of Schoch's treatment. *Liapis v. O'Malley*, No. 23-cv-0063-jdp, 2024 WL 4344745, at *5 (W.D. Wis. Sept. 30, 2024).

## B. Residual functional capacity assessment

Schoch contends that the ALJ failed to adequately articulate why the evidence supported the limitations in his RFC findings. Dkt. 6, at 14–17. The ALJ found that, despite Schoch's mental impairments, she was capable of the following:

- Understand, remember, or carry out only simple instructions and tasks in a work environment with few, if any, changes in the work duties or expectations

- Perform work with daily, weekly or monthly quotas[,] but [she] is precluded from work with a specific production-rate pace, such as assembly line work or work with strict hourly quotas

- Occasional contact with the public[,] but [she] is precluded from work involving direct customer service

- Occasional interaction with coworkers or supervisors after a short training period, but [she] can perform tandem tasks with coworkers on only an incidental basis (for example, she can work around others, share tools or help lift or carry items as needed[,] but [she] is precluded from work that routinely requires additional cooperative effort with other coworkers to complete a process or create a product)

R. 22. In reaching these RFC findings, the ALJ largely rejected the prior administrative medical findings and medical opinions as either partially persuasive, less persuasive, or unpersuasive. R. 25–26. Schoch acknowledges that the ALJ was free to reject these prior findings and medical opinions, and she doesn't challenge the ALJ's handling of that evidence. *See* Dkt. 6, at 16.

7

But Schoch argues that the ALJ erred because, after rejecting the prior findings and medical opinions, the ALJ didn't point to *other* objective medical evidence to support his RFC findings. *See id.* at 16–17. ALJs aren't allowed to "play doctor" by rejecting all the available medical opinions and substituting their own lay interpretations of the objective medical evidence in the record. *Deborah M.*, 994 F.3d at 790; *see Clifford*, 227 F.3d at 870. Instead, they must explain why their RFC findings are supported by other objective medical evidence in the record. *Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019); *Vang v. Saul*, 805 F. App'x 398, 401–02 (7th Cir. 2020).

Schoch contends that the ALJ failed to build a logical bridge connecting the evidence in the record to his conclusions because the ALJ didn't conduct a detailed analysis of the evidence in the RFC section of his decision. Dkt. 6, at 14–15. True, some of the ALJ's discussion of the evidence appears in a different portion of his decision (his step two analysis). R. 20–22. But the court must consider the ALJ's decision holistically. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). The question is whether the ALJ weighed the relevant medical evidence and explained how he determined Schoch's functional limitations. *See Jozefyk*, 923 F.3d at 498; *Stone v. Saul*, No. 19-cv-435-wmc, 2020 WL 3603775, at *3 (W.D. Wis. July 2, 2020).

The ALJ properly explained why his RFC findings were supported by objective medical evidence in the record. The ALJ based his RFC findings on Schoch's clinical examinations and psychological evaluations. *See* R. 20–24. He also credited some of Schoch's self-reported symptoms. *See id.* For example, the ALJ noted that Schoch alleged she had "problems with her ability to remember, understand, and follow instructions." R. 20. The ALJ concluded that Schoch's daily activities (preparing simple meals and caring for pets) and her clinical examinations (tests of her ability to recall information) didn't support her reported degree of

limitation. *See id.* But he nevertheless tailored his RFC findings to accommodate her limitations: he found Schoch could "understand, remember, or carry out only simple instructions and tasks." R. 22.

Schoch also contends that the ALJ "did not explain why [Schoch] was limited in her work pace but not restricted in her ability to otherwise concentrate and persist at work tasks," given that one medical professional found that she took an excessive amount of time to complete a test. Dkt. 6, at 16. But the ALJ incorporated concentration- and persistence-related limitations into his RFC findings by limiting Schoch to simple tasks with few changes in work expectations and by precluding her from work with production requirements such as strict hourly quotas. R. 22; *see Martin*, 950 F.3d at 374. Schoch does not point to any evidence that additional limitations were needed that the ALJ failed to consider.

## C. Medical opinion

Schoch contends that the ALJ didn't adequately explain why he discounted as less persuasive the opinion by Tamara Laskowski, a licensed therapist. Dkt. 6, at 17–18. Schoch argues that the ALJ erred because his reasons for discounting Laskowski's opinion do not apply to Laskowski's finding that Schoch would have "good days" and "bad days," and would likely be absent from work more than four days per month. R. 472. But the ALJ rejected Laskowski's opinion because it wasn't consistent with the objective medical evidence, reasoning which would also apply Laskowski's absenteeism finding. *See* R. 26. The ALJ adequately explained why he found Laskowski's opinion to be less persuasive.

ORDER

IT IS ORDERED that: the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment and close the case.

Entered March 27, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge